**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:
OAKLAND PARK INN, INC.,                     Case No. 19-10620-JKO

    Debtor.                                  Chapter 11 Proceedings
_____/

**PLAN OF REORGANIZATION OF THE ALICE MARQUEZ REVOCABLE TRUST, DATED JULY 23, 2015**

**ARTICLE I**
**SUMMARY**

    The Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") is proposed by the ALICE MARQUEZ REVOCABLE TRUST, DATED JULY 23, 2015 ("Plan Proponent"), as follows:

    This Plan provides for 1 group of Chapter 11 Administrative Claims, 3 groups of priority tax claims, 4 classes of secured claims, one class of unsecured claims; and 1 class of equity security holder interests. This Plan provides for the payment in full of allowed administrative claims, allowed priority claims, allowed secured claims and a pot of money for the 3 General Unsecured Creditors, with certain creditors being separately categorized based upon agreements for payment which may be entered with the Plan Proponent. The Plan Proponent reserves the right to amend this Plan at any time prior to confirmation.

    All creditors and equity security holders should refer to Articles I through XI of this Plan for information regarding the precise treatment of their claim(s). A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one (if you do not have an attorney, you may wish to consult one).

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

    2.01   Group 1. All Allowed Chapter 11 Administrative entitled to priority under §507(a)(2) of the Code.
    2.02   Group 2. All priority tax claims of Broward County, Florida under §507(a)(8).
    2.03   Group 3. All priority tax claims of State of Florida, Department of Revenue under §507(a)(8).
    2.04   Group 4. All priority tax claims of the Department of Treasury, Internal Revenue Service under §507(a)(8).

      2.05   Class 1- Secured claims of Broward County for the 2017 Real Property Taxes for the Real Property.
      2.06   Class 2- Secured claims of Broward County for the 2018 Real Property Taxes for the Real Property.
      2.07   Class 3- Secured claims of Broward County for the 2019 Real Property Taxes for the Real Property.
      2.08   Class 4- Secured claims of Broward County for the Personal Property Taxes for the Personal Property owed against the Personal Property owned by the Plan Proponent.
      2.09   Class 5- General Unsecured Claims.
      2.10   Class 6- Equity interests of the Debtor.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

      3.01   <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes, but groups.

      3.02   <u>Administrative Expense Claims</u>.  Each holder of an allowed administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Plan Proponents.

      3.03   <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid the full amount of its priority claim over a period not to exceed 60 months from the Petition Date, at 4% interest, in full satisfaction of its priority claim (or as otherwise agreed). The Plan Proponent estimates that the total priority tax claims will be around $1,300,000.00 and that these Claims will all be paid from the proceeds from the Sale of the Real Property, as defined *infra*.

      3.04  <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

      4.01   Claims and interests shall be treated as follows under the Plan:

**<u>Class 1</u> – Secured claims of Broward County for the 2017 Real Property Taxes for the Real Property, pursuant to an issued Tax Certificate.**

**Unimpaired**

Class 1 is unimpaired by this Plan. Each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, as otherwise agreed to by the holders of these claims and the Plan Proponent, or by March 31, 2021, with interest at the legal rate.

Class 1 is deemed to have accepted this Plan and is, therefore, not entitled to vote on the Plan.  No amount is believed to be due.

**Class 2 –   Secured claims of Broward County for the 2018 Real Property Taxes for the Real Property.**

**Unimpaired**

TREATMENT**:** Class 2, is unimpaired by this Plan. Each holder of a Class 2 Secured Claim will be paid in full, in cash, upon the later of the effective date of this Plan, as otherwise agreed to by the holders of these claims and the Plan Proponent, or by March 31, 2021, with interest at the legal rate.

Class 2 is deemed to have accepted this Plan and is, therefore, not entitled to vote on the Plan.

**Class 3 – Secured claims of Broward County for the 2019 Real Property Taxes for the Real Property.**

**Unimpaired**

TREATMENT**:** Class 3, is unimpaired by this Plan. Each holder of a Class 3 Secured Claim will be paid in full, in cash, upon the later of the effective date of this Plan, as otherwise agreed to by the holders of these claims and the Plan Proponent, or by March 31, 2021, with interest at the legal rate.

Class 3 is deemed to have accepted this Plan and is, therefore, not entitled to vote on the Plan.

**Class 4 – Secured claims of Broward County for the Personal Property Taxes for the Personal Property owed against the Personal Property owned by the Plan Proponent.**

**Unimpaired**

TREATMENT**:** Class 4, is unimpaired by this Plan. Each holder of a Class 4 Secured Claim will be paid in full, in cash, upon the later of the effective date of this Plan, as otherwise agreed to by the holders of these claims and the Plan Proponent, or by March 31, 2021, with interest at the legal rate.

Class 4 is deemed to have accepted this Plan and is, therefore, not entitled to vote on the Plan.

**Class 5- General Unsecured Creditors**

**Impaired**

TREATMENT**:** Class 5 consists of all general unsecured creditors who are not otherwise set forth specifically herein. This Class is impaired by this Plan. The holder of a Class 5 claim will be paid in part, in cash, upon the later of the effective date of this Plan, as otherwise agreed to by the holders of these claims and the Debtor, or the date on which such claims are allowed by a Final Order is defined to have accepted this Plan. Creditors in Class 5 are entitled to vote on the Plan and are not deemed to have accepted this Plan.

The Claims Register lists various amount due from priority creditors, trade creditors, utilities and others, but is unclear that all of these claims will be allowed since some are disputed, some may have been paid and some are unliquidated.  The Plan Proponent believes that it is too early to determine the allowed general unsecured claims in this class.

**Class 6 – Equity Interest Holders of The Debtor**

**Impaired**

The shares of the Debtor's stock shall be canceled and the Equity Interest Holders will receive all of the stock in the reorganized Debtor which is estimated to be 100 shares.

**TREATMENT:** Class 6 is impaired by this Plan and is deemed to have rejected this Plan.

4.02 Explanation of classification and treatment of impaired Class 6. While the Plan Proponent believes that it is entitled to a claim in excess of $1,200,000.00, the Plan Proponent is waiving any right to a distribution under this Plan and is infusing approximately $1,500,000.00 into this Plan in order to resolve most of the case issues.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS AND INTERESTS**

5.01 Disputed Claim. A disputed claim or interest is a claim that has not been allowed or disallowed by a final non-appealable order, and to which either (i) a proof of claim or interest has been filed or deemed filed, and the Debtor, an interest holder of the Debtor or another party in interest has filed an objection; or (ii) no proof of claim or interest has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distributions on a Disputed Claim. No distribution will be made on account of a disputed claim or interest unless such claim or interest is allowed by a final non-appealable order.

5.03 Settlement of Disputed Claims and Interests. The Plan Proponent and/or the Reorganized Debtor will have the power and authority to settle and compromise a disputed claim or interest with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01 Assumed Executory Contracts and Unexpired Leases. There are no Executory Contracts or Unexpired Leases which the Plan Proponent intends to seek to have assumed and assigned.

6.02 The Trustee will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 above, upon the entry of the order confirming the Plan. A proof of claim arising from the

rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming the Plan.

## ARTICLE VII
## RETENTION AND ABANDONMENT BY THE REORGANIZED DEBTOR OF CAUSES OF ACTION

The Reorganized Debtor shall abandon any potential claims and actions to recover transfers of Estate Assets under sections 548, 542, 545, 549, 547, 553, 544 and 550 of the Bankruptcy Code. This is being done in order to facilitate the reorganization process and to eliminate future litigation and related professional fees.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be implemented as follows:

8.01 Post-Confirmation Management, Corporate Action and Governance of the Reorganized Debtor. Except as provided in the Plan, the Reorganized Debtor will perform any obligation of the Debtor that remains and shall have full control and authority over property of the estate of the Debtor (as the term is defined in section 541 of the Bankruptcy Code) without the need for Bankruptcy Court approval, or any other provision of Bankruptcy Court or United States Trustee control or oversight during a chapter 11case, including but not limited to: policy making, day-to-day operations, financing, transactions, corporate governance, and any and all other management activity. Upon the entry of the Confirmation Order, the transactions contemplated by the Plan shall be deemed authorized and approved in all respects. The Trustee shall be discharged on the Effective Date and John A. Moffa will become the president of the Reorganized Debtor and shall resume management of the Reorganized Debtor on the Effective Date until all payments due under the Plan of Reorganization are made. Upon the Effective Date and discharge of the Trustee, John A. Moffa shall be deemed authorized, approved and directed to execute and bind the Reorganized Debtor with respect to all documents necessary to effectuate the transactions contemplated by or allowable under the Plan, and shall be authorized to make amendments to the Reorganized Debtor's by-laws and Articles and the issuance of new shares of stock necessary to incorporate terms for the treatment of Class 6 under the Plan and provided for other requirements of the Plan.

8.02 Distributions To Holders As Of The Record Date. As of the date that the Bankruptcy Court enters the order confirming the Plan (the "Record Date"), the claims register shall be closed, and there shall be no further changes in the record holder of any claim. The disbursing agent shall have no obligation to recognize any transfer of any claim occurring after the Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register or otherwise, as of the close of business on the Record Date for distributions under the Plan.

8.03 Unclaimed and Time Barred Distributions. All distributions under the Plan that are unclaimed for one (1) year after distribution thereof shall be deemed unclaimed property under §347 of the Code and any entitlement to any holder of a claim to such distribution shall be extinguished and forever barred. Checks issued by the disbursing agent in respect of Allowed claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof. Any claim with respect to such a voided check shall be made on or before two hundred seventy (270) days after the date of issuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred and said funds shall be retained by the Reorganized Debtor free and clear of any claim or interest.

8.04 On the Effective Date of the Plan, the Plan Proponent will deposit the total sum of $100,000.00 into the Trust Account of Moffa & Breuer, PLLC. Said sum will be used to pay the Group 1 Allowed Administrative Expenses allowed pursuant to 11 U.S.C. § 507(a)(2), any unpaid United States Trustee fees and the Class 5 General Unsecured Creditors.

8.05 The Plan Proponent intends to offer its interest in the Real Property located at 3001 N. Federal Highway, Fort Lauderdale, FL 33306 (the "Real Property") for sale and will dedicate enough of the funds from the sale of the Real Property toward the payments of all other claims in Groups 2, 3 & 4 and Classes 1, 2, 3 and 4 of the proposed Plan of Reorganization.

**ARTICLE IX**
**GENERAL PROVISIONS**

9.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a) "Administrative Expense Claim" means a claim (i) arising on or after the Petition Date and prior to the effective date for a cost or expense of administration of this Chapter 11 case, that is entitled to priority or super priority pursuant to sections 364(c)(1), 503(b), or 507(a)(2) of the Code, including applications of professionals for payment of fees and expenses, including, applications based on a professional's substantial contribution to the case or estate, and actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor or (ii) entitled to priority under section 503(b)(9) of the Code.

(b) "Administrative Expense Claim Bar Date" shall mean the date established by an order of the Bankruptcy Court as the deadline for the filing by any creditor or other party in interest of an application, motion or request for allowance of any administrative expense claim, provided, however, that the administrative expense claim bar date shall not apply to Professionals' fee claims. Any holder of an administrative expense claim that does not file an application, motion or request by the applicable administrative expense claim bar date shall be forever barred, estopped and enjoined from ever

asserting such administrative expense claim against the Debtor or the Debtor's estate or any of their respective assets, and such holder shall not be entitled to participate in any distribution under the Plan on account of any such administrative expense claim.

(c) "Allowed" means with reference to a claim, any claim or interest to the extent it has not been withdrawn, paid, deemed satisfied in full or otherwise extinguished that (i) has been listed by the Debtor in its bankruptcy schedules as liquidated in amount and not disputed or contingent, for which no contrary proof of claim or interest has been filed, and for which no objection to the allowance thereof has been interposed on or before the Claims Objection Deadline, (ii) proof (or with respect to an Administrative Expense Claim, a request for payment) of which has been filed on or before the Bar Date, and for which no objection to the allowance thereof has been interposed on or before the Claims Objection Deadline, (iii) is allowed pursuant to the Plan or procedures set forth in the Plan, (iv) is compromised, settled, or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or (v) an objection to the allowance of which has been interposed on or before the Claims and Interest Objection Deadline, but for which a Final Order of the Bankruptcy Court has been entered allowing such claim, provided however, that claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an "Allowed Claim" or "Allowed Interest" hereunder. Except as otherwise provided in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim or Interest (including a disputed claim or interest that subsequently becomes an Allowed Claim) shall not include (a) any interest, penalty, or late charge arising or accruing after the Petition Date, or (b) any award or reimbursement of attorney's fees or related expenses or disbursements.

(d) "Bar Date" means the deadline by which creditors of the Debtor must file proofs of claim or interest, which is May 28, 2019 for all creditors, except for governmental units, and July 15, 2019 for governmental units.

(e) "Claims and Interests Objection Deadline" means the last day for filing objections to claims or interests, which shall be the later of (a) 180 days after the effective date or (b) such other date as may be approved by the Bankruptcy Court.

(f) "Estate" means the estate created for the Debtor pursuant to section 541 of the Code.

(g) "Final Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to seek an appeal, petition for certiorari, or other proceedings for rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for rehearing shall then be pending; (b) as to which any right to appeal, petition for certiorari, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor; or (c) in the event that an appeal, petition for certiorari, or motion for rehearing has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed or from which rehearing was sought, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or other proceedings for rehearing shall have expired; provided however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), or any analogous procedural rules under applicable state or federal law, can be filed with respect to such order.

(h) "Parties" means the Debtor, all creditors of the Debtor, all equity interest holders of the Debtor, the Plan Proponent and the Trustee.

(i) "Petition Date" means January 16, 2019, the date on which the Debtor filed this Chapter 11 case.

(j) "Real Property" means that real property owned by the Plan Proponent known as 3001 North Federal Highway, Fort Lauderdale, FL 33306.

(k) "Reorganized Debtor" shall mean Oakland Park Inn, Inc. in whom the property of the estate vests upon the Effective Date.

9.02 Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order confirming the Plan. If, however, a stay of the order confirming the Plan is in effect on that date, the effective date will be the first business day after the date on which the stay of the order confirming the Plan expires or is otherwise terminated.

9.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05 Captions. The hearings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE X**
**DISCHARGE OF DEBTOR, VESTING OF PROPERTY OF ESTATE, AND TERMINATION OF RIGHTS AND INTERESTS OF EQUITY INTEREST HOLDERS, RELEASES AND BAR ORDER**

10.01 Discharge, Vesting of Property of Estate, and Termination of Rights and Interests of Equity Interest Holders. In accordance with §1141 of the Code: the Plan will be binding upon all creditors, the Plan Proponent, the Debtor and its equity interest holders to the full extent provided in Section 1141 (a); the Debtor will be discharged from all debts to the fullest extent of Section 1141 (d); all property of the Debtor and the estate of the Debtor shall vest in the Reorganized Debtor; and the rights and interests of all equity interest holders of the Debtor as of the Effective Date, are terminated and replaced by the issuance of stock of the Reorganized Debtor as provided in Article IV.

10.02 Injunction and Bar Order. Upon the entry of a Confirmation Order that is final and non-appealable ("Final Confirmation Order"), any and all (1) creditors of the Debtor whose claims are included in any class under the Plan, whether or not they filed a proof of claim, (2) stockholders holding common stock of the Debtor prior to the Bankruptcy Case, and successors to such stockholders (3) stockholders being issued new stock in the Reorganized Debtor under the Plan, and their respective successors, assigns, agents and professionals (each defined as a "Party" and collectively defined as the "Parties") are permanently barred, prohibited, enjoined and restrained from filing, commencing, prosecuting, pursuing, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, in any federal or state court or in any other judicial or non-judicial proceeding (including, without limitation, any proceeding in any judicial, arbitral, mediation, administrative, or other forum), any and all Claims (as such term is defined by 11 U.S.C. Section 101(5)), actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever (including unknown claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which any Party or anyone claiming through a Party, on a Party's behalf or for a Party's benefit may have or claim to have, now or in the future, against any of the other Parties and the Debtor or Reorganized Debtor from the beginning of the world to the date of the Final Confirmation Order based upon, arising out of, in connection with, in consequence of, or in any way involving or relating in any manner whatsoever, directly or indirectly, to the equity ownership, management, operations, distributions, finances, business decisions or governance of the Debtor.

10.03 Releases. With the exception of the obligations by any Parties including the Plan Proponent, upon entry of a Final Confirmation Order, each Party shall be deemed to have irrevocably and unconditionally freely, finally and forever waived, released, acquitted and discharged all of the other Parties, the Plan Proponent and the Debtor and Reorganized Debtor from any and all Claims (as such term is defined by 11 U.S.C. Section 101(5)), actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever (including unknown claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which any Party or anyone claiming through a Party, on a Party's behalf or for a Party's benefit may have or claim to have, now or in the future, against any of the other Parties, the Plan Proponent and the Debtor or Reorganized Debtor from the beginning of the world to the date of a Final Confirmation Order.

**ARTICLE XI**
**OTHER PROVISIONS**

11.01 Retention of Jurisdiction - Scope of Jurisdiction: Notwithstanding the entry of the order confirming this Plan and the occurrence of the effective date, the Bankruptcy Court shall retain such jurisdiction over this Chapter 11 case and the Plan to the fullest extent legally permissible, including but not limited to, jurisdiction to:

(a) Hear and determine pending applications (including pursuant to the Plan) for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of cure amounts and claims resulting therefrom.

(b) Hear and determine any and all adversary proceedings, applications, and contested matters in this Chapter 11 case, whether pending on the date the Bankruptcy Court confirms this Plan or commenced thereafter.

(c) Hear and determine any objection to, estimation of, or compromise of claims.

(d) Enter and implement such orders as may be appropriate in the event the order confirming the Plan is for any reason stayed, revoked, modified or vacated.

(e) Consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court entered in this Chapter 11 case, including the order confirming the Plan.

(f) Hear and determine all applications with respect to Fee Claims.

(g) Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and order confirming the Plan, including any and all disputes arising in connection with the interpretation, implementation or enforcement of any provisions contained in the Plan, and issue such orders as are necessary to aid in the implementation of the Plan. This includes retention of jurisdiction by the Court to enforce the Bar Order, Injunction, Releases and Discharge provisions of Articles X and the corporate governance and disclosure limitations provided in Article VIII of the Plan.

(h) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan or order confirming the Plan.

(i) Recover all assets of the Debtor and property of the Debtor's Estate, wherever located.

(j) Hear and determine matters concerning taxes in accordance with sections 346, 505, and 1146 of the Code.

(k) Shorten or extend, for cause, the time fixed for performance of any act or thing under this Plan or order confirming the Plan, on notice to interested parties or on an ex parte basis, as the Bankruptcy Court shall determine to be appropriate.

(l) Hear and enter orders as to any other matter not inconsistent with the Bankruptcy Court's jurisdiction.

(m) Enter a final decree closing this Chapter 11 case as contemplated by Bankruptcy Rule 3022.

(n) The Bankruptcy Court retains exclusive jurisdiction to hear and determine and issue final orders on all Objections to Claims and all Objections to Interests.

11.02 Provisions to Invoke Cramdown Proceedings if Necessary. If all applicable requirements of section 1129(a) of the Code are met other than paragraph 8 of said section which requires that all impaired claims accept the Plan, the Plan Proponent will seek confirmation of the Plan pursuant to section 1129(b) of the Code, which is commonly referred to as the "cram down" provision. For the purposes of seeking confirmation under the cram down provision of the Code, should that alternative means of confirmation prove to be necessary, the Plan Proponent reserves the right to modify or vary the terms of the Plan with regard to the Allowed claims of any rejecting classes, so as to comply with the requirements of section 1129(b).

11.03 Amendment or Modification of the Plan.
(a) Any alterations, amendments, or modifications of or to the Plan may be made in writing by the Plan Proponent at any time prior to the entry of the order confirming the Plan, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponent shall have complied with section 1125 of the Bankruptcy Code.
(b) Any alterations, amendments, or modifications of or to the Plan may be made in writing by the Plan Proponent at any time after the entry of the order confirming the Plan and before substantial consummation of the Plan, provided that (i) the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code.
(c) A holder of a claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the claim of such holder.

11.04 Tax Matters. Notwithstanding any other provision of this Plan, each entity or person receiving a distribution of any consideration pursuant to the confirmed Plan will have sole and exclusive responsibility for the determination of the tax consequences to such entity or person and for the satisfaction and payment of any tax obligations imposed on such entity or person on account of the distribution, including income, withholding and other tax obligations.

11.05 Exemption From Taxes. Pursuant to Section 1146(a) of the Code, the issuance, distribution, transfer or exchange of any security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any asset of, by or in the Debtor or its Estate pursuant to, in implementation of or as contemplated by the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, by the order confirming the Plan, be directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Dated March 20, 2019


<u>John A. Moffa    /s/</u>
Moffa & Breuer, PLLC
Attorneys for the Alice Marquez Trust
1776 N Pine Island Rd., #102
Plantation, FL 33322
FBN 932760
Tele: 954-634-4733
Email: John@Moffa.Law